Benjamin J. Mann, Bar Number 12588
Paul M. Halliday, Jr., Bar Number 5076
Stephen B. Watkins, Bar Number 3400
HALLIDAY & WATKINS, P.C.
Attorneys for U.S. Bank National Association
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Telephone:  (801) 355-2886
Fax:  (801) 328-9714
Email: bkdocs@halliday-watkins.com
File No:  35048

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>CASEY PETERSON<br><br>Debtor. | Bankruptcy Case No. 11-21297 WTT<br><br>Chapter 7<br><br>**MOTION TO TERMINATE AUTOMATIC STAY AS TO U.S. BANK NATIONAL ASSOCIATION**<br><br>[Filed Electronically] |

U.S. Bank National Association, hereinafter referred to as ("Secured Creditor"), hereby moves the Court pursuant to 11 U.S.C., Section 362(d), Bankruptcy Rules 4001 and 9014 and Local Rules 4001-1 and 9013-1, for an order terminating the automatic stay with respect to the following described real property (the "property") located in Salt Lake County, State of Utah:

>Lot 273, WESTVIEW TERRACE NO. 4, according to the Official Plat thereof recorded in the Office of the County Recorder of Said County;
>Commonly known as 5415 West Townsend Way, Salt Lake City,
>UT 84118;

so that it may proceed to pursue its rights and remedies under applicable law. This motion is based on the following.

1. That Secured Creditor is the holder of the Note and has a valid Trust Deed lien against the property, which Note and Trust Deed are in default and owing for the June 1, 2010 payment.

2. That Debtor has no equity in the property and the property is not necessary for an effective reorganization. The payoff as of the bankruptcy filing date was $96,999.69. The value per the debtors` statements and schedules is $150,000.00. Additionally, there is a second position deed of trust lien in the approximate amount of $50,799.00.

3. The Debtor has failed to provide Secured Creditor with adequate protection of its interest in the property.

4. That the above allegations constitute sufficient cause pursuant to 11 U.S.C., Section 362(d), entitling Secured Creditor to an order terminating the automatic stay so that Secured Creditor may proceed to pursue its rights and remedies under applicable law.

5. With respect to Rule 4001(a)(3), the Court should allow immediate enforcement of any order for relief granted herein.

6. That copies of the Trust Deed and Assignment of Trust Deed are attached hereto.

WHEREFORE, Secured Creditor moves the Court for the following relief:

1. That the evidentiary hearing to be held within thirty (30) days of the date of this motion in accordance with 11 U.S.C., Section 362, be the final evidentiary hearing on this matter;

2. That the automatic stay pursuant to 11 U.S.C., Section 362, be modified and terminated to permit Secured Creditor to immediately exercise its rights and remedies under applicable state and federal law. In the alternative, the Debtor should be ordered to provide Secured Creditor with adequate protection of its interest in the property;

3. Secured Creditor seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement. Any such agreement shall be non-recourse unless included in a reaffirmation agreement. Secured Creditor further requests that it be allowed to contact the debtor via telephone or written correspondence to offer such an agreement.

DATED this 1st day of March, 2011.

/s/ Benjamin J. Mann
Benjamin J. Mann
Attorney for Secured Creditor

When Recorded Mail To:

AMERICAN FINANCIAL RESOURCES,

3770 N 7TH STREET STE 100
PHOENIX, AZ 85014

8096438

```
       8096438
12/19/2001 03:46 PM 22.00
Book - 8543 Pg - 6489-6495
      GARY W. OTT
RECORDER, SALT LAKE COUNTY, UTAH
BACKMAN-STEWART TITLE SERVICES
BY: KCC, DEPUTY - WI  7 P.
```

|Space Above This Line For Recording Data|

# DEED OF TRUST

PETERSON
LOAN NUMBER: 
CASE NUMBER:
PARCEL NUMBER: 20-12-105-029

THIS DEED OF TRUST ("Security Instrument") is made on    DECEMBER 12, 2001    . The Grantor is
CASEY PETERSON, AN UNMARRIED MAN

("Borrower"). The Trustee is BACKMAN STEWART TITLE SERVICES    ("Trustee"). The beneficiary is
AMERICAN FINANCIAL RESOURCES, INC
which is organized and existing under the laws of ARIZONA    , and whose
address is 3770 NORTH 7TH STREET STE 100 PHOENIX, 85014
("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED NINE THOUSAND THIRTY AND 00/100
Dollars (U.S. $ 109,030.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on JANUARY 1, 2032    .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph
7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under
this Security Instrument and the Note. For this purpose, Borrower, in consideration of the bedt and the trust herein created,
irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in
SALT LAKE    County, Utah:
LOT 273, WESTVIEW TERRACE NO. 4 ACCORDINGTO THE OFFICIAL PLAT THEREOF RECORDED IN
THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY..

which has the address of    5415 WEST TOWNSEND WAY, SALT LAKE CITY    [Street, City],
Utah    84118    ("Property Address");
[Zip Code]

BK 8543 PG 6489

DOCU2UT1 01/28/00
DOCU2UT1.VTX 12/21/2000

Page 1 of 7

FHA Utah Deed of Trust - 10/95

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants, with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender Covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall include pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage or deficiency as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
<u>Third</u>, to interest due under the Note;
<u>Fourth</u>, to amortization of the principal of the Note; and
<u>Fifth</u>, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not exceed or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale of transfer of the Property)and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lenders of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the property and Lenders rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the

BK8543PG6491

option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender Determines that any part of the Property is subject to a Lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owing all or part of the Property, is sold or otherwise transferred (other than by devise or descent) by the Borrower, and
(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on

BK8543PG6492

different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the property under the terms of this security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law: Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property or small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender of Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment of additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee

BK8543PG64493

for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the power of sale invoked, Trustee shall execute a written notice of the occurrence of an event of default and of election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located, Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

If the lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the property and shall surrender this Security Instrument and all notes evidencing debts secured by this security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with

BK8543PG6494

DOCU2UT6 01/28/00  
DOCU2UT6.VTX 12/21/2000

Page 6 of 7

FHA Utah Deed of Trust – 10/95

this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider            ☐ Growing Equity Rider         ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider
☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____(Seal)   _____ (Seal)
CASEY PETERSON         -Borrower                                      -Borrower

STATE OF __Utah__, __Salt Lake__ county ss:

The foregoing instrument was acknowledged before me __13th__ day of __Dec. 2001__
by __Casey Peterson__

My Commission expires: _____
    ~~JANUARY 21, 2002~~

Notary Public residing at:
Title or rank
Seal Number, if any

NOTARY PUBLIC
JIM CROCKATT
6995 So. Union Pk. Ctr., Ste. 150
Midvale, Utah 84047
Commission Expires
July 8, 2005
STATE OF UTAH

BK8543PG6495

DOCU2UT7
DOCU2UT7.VTX  12/29/2000                     Page 7 of 7                     FHA Utah Deed of Trust – 10/95

After recording return to:
Halliday & Watkins, P.C.
376 East 400 South, Suite 300
Salt Lake City, Utah 84111

File # 35048
DOC ID: ~~*********~~

11110027
1/4/2011 3:49:00 PM $10.00
Book - 9895 Pg - 8149
Gary W. Ott
Recorder, Salt Lake County, UT
HALLIDAY & WATKINS
BY: eCASH, DEPUTY - EF 1 P.

# ASSIGNMENT OF DEED OF TRUST

**FOR VALUABLE CONSIDERATION**, the receipt of which is hereby acknowledged, Mortgage Electronic Registration Systems, Inc. (MERS); 3300 SW 34th Avenue, Suite 101; Ocala, FL 34474 (1-888-679-6377), hereby sells, assigns and transfers without recourse to **U.S. Bank, National Association**; 4801 Federica, West B; Owensboro, KY 42301, all beneficial interest under that certain Deed of Trust dated December 12, 2001, and executed by Casey Peterson, as Trustor, to Backman Stewart Title Services, as Trustee, and recorded in the office of the County Recorder of Salt Lake County, State of Utah on December 19, 2001, as Entry No. 8096438, in Book 8543, at Page 6489, of Official Records, describing and relating to the real property situated in Salt Lake County, State of Utah, particularly described as follows:

Lot 273, WESTVIEW TERRACE NO. 4, according to the Official Plat thereof recorded in the Office of the County Recorder of Salt Lake County, Utah.  **TAX # 20-12-105-029**

Together with the note or notes herein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Effective Date: November 1, 2010

Mortgage Electronic Registration Systems, Inc. (MERS)

By: _Kim Stewart_

Its: _Kim Stewart Asst Secretary_

State of Kentucky        )
                         :ss.
County of Daviess        )

The foregoing instrument was acknowledged before me this 12/23/10, by Kim Stewart, the Asst. Secretary of said Corporation.

_Heather Postlewaite_
Notary Public

OFFICIAL SEAL
HEATHER POSTLEWAITE
NOTARY PUBLIC – KENTUCKY
STATE-AT-LARGE
My Comm. Expires Jan. 17, 2012